WISCONSIN STATE EMPLOYEES UNION (WSEU),
AFSCME, AFL-CIO, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Respondent.

Court of Appeals

*No. 93–3183. Submitted on briefs July 14, 1994.—Decided
November 23, 1994.*

(Also reported in 525 N.W.2d 783.)

For the petitioner-appellant the cause was submitted on the briefs of *Richard V. Graylow* of *Lawton & Cates, S.C.* of Madison.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   The Wisconsin State Employees Union, AFSCME, and the AFL-CIO (collectively "WSEU") appeal from an order affirming a decision of the Wisconsin Employment Relations Commission (WERC) which sets aside a WERC hearing examiner's determination that the University of Wisconsin-Madison Physical Plant Division had not complied with an arbitrator's award. WERC remanded the case to the

arbitrator to clarify whether Stephen Morkin is entitled to a full or pro rata share of lost wages and benefits for the period during which he was wrongfully discharged. WSEU contends that WERC incorrectly determined that the arbitrator's award is ambiguous and therefore argues that remand is not warranted. We agree with WSEU that the arbitrator's award is not ambiguous, and therefore reverse.

## BACKGROUND

In November 1988, the University discharged Stephen Morkin, a building maintenance worker, for disciplinary violations. WSEU filed a grievance with an arbitrator and hearings were held. On July 13, 1990, the arbitrator reduced the discharge to a ten-day suspension and ordered the University to pay Morkin "all lost wages and benefits."

The University reinstated Morkin as of July 30, 1990. On March 15, 1991, the University informed Morkin that annual leave, personal holidays and legal holidays earned from the date of his discharge to reinstatement would be included in his total back pay. However, the University prorated the annual leave and personal holidays for 1990 and credited Morkin with only fifty-one hours of annual leave and ten hours of personal holiday for the period between July 30, 1990 through December 31, 1990. The University also prorated Morkin's sick leave based upon his history of using sick leave as it was earned. The University explained, "[b]ased on your prior use, we considered all sick leave earned during the period of November 6, 1988 through July 30, 1990, as *used* and included as part of the hours paid." Consequently, Morkin was not compensated for any sick leave accrued during the period he was wrongfully terminated.

WSEU filed a complaint with WERC to enforce the award, arguing that the University was not complying with the arbitrator's award and was committing unfair labor practices in violation of § 111.84, STATS. The WERC hearing examiner found that the issue of what would constitute an appropriate remedy if Morkin was found wrongfully discharged was not raised or argued before the arbitrator. The examiner determined that by prorating Morkin's sick leave, annual paid leave and personal holiday credits for 1990, the University had not complied with the terms of the arbitrator's award. Consequently, the examiner concluded that the University had committed unfair labor practices.

WERC adopted the examiner's finding that the remedy issue was not raised or argued before the arbitrator and reasoned that his view on this issue was unknown. Consequently, WERC set aside the examiner's findings that the University was not complying with the arbitrator's award and concluded that the award did not resolve the question of the extent of Morkin's entitlement to sick leave, annual paid leave and personal holidays for 1990. WERC remanded this issue to the arbitrator for clarification. The trial court reviewed WERC's decision with deference and subsequently affirmed. WSEU appeals.

## STANDARD OF REVIEW

We review an administrative agency's decision and not that of the trial court. *Lewandowski v. State*, 140 Wis. 2d 405, 409, 411 N.W.2d 146, 148 (Ct. App. 1987). We apply three levels of deference to conclusions of law made by an administrative agency. The greatest deference given to agency interpretations is the "great

weight" standard which is given when the "agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute . . . ." *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991) (quoting *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539 (1984)). The next level of review is the "due weight" or "great bearing" standard which is given when "the agency decision is 'very nearly' one of first impression." *Id.* at 413-14, 477 N.W.2d at 270 (citation omitted). The lowest level of deference is the *de novo* standard, in which "no weight" is given when the case is one of first impression and the agency has no special expertise or experience in the particular area. *Id.* at 414, 477 N.W.2d at 270-71.

Neither WERC nor WSEU cite any Wisconsin appellate decision addressing when an arbitrator's award should be remanded to an arbitrator for clarification.[1] Because this is an issue of first impression in Wisconsin and WERC has no special expertise or experience in determining whether an arbitration award is ambiguous, we apply the *de novo* standard. *Id.*

### ARBITRATOR'S AWARD

WERC contends that its determination that the arbitration award did not resolve whether Morkin is entitled to his full sick leave, annual paid leave and personal holidays for 1990 rather than a prorated amount was reasonable and that a remand to the arbi-

---

[1] WERC concedes in its argument as to why it believes this opinion should be published that "there are no Wisconsin judicial decisions which address the issue of when it is proper to remand a matter to an arbitrator for clarification of an arbitration award and the issuance of a supplemental award."

trator for a supplemental award was proper. According to WERC, the arbitrator's award may be read to permit the University to prorate the award. Consequently, WERC concludes that remand is proper so that the arbitrator may clarify the remedy. We disagree.

Courts do not interpret ambiguous arbitration awards. Those which are unclear should be remanded for clarification. *United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister and Son, Inc.*, 950 F.2d 1340, 1345 (7th Cir. 1991). Nevertheless, the preferred method is to avoid a remand to the arbitrator when possible so as not to frustrate concerns for a prompt and final arbitration·process. *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992) (citations omitted). Thus, a court may interpret an ambiguous award if the record resolves the ambiguity. *Id.*

After concluding that Morkin was wrongfully discharged, the arbitrator ordered him reinstated and awarded him "all lost wages and benefits." The plain language of this award is unambiguous and susceptible to only one reasonable interpretation: Morkin is entitled to *all* lost wages and benefits, and not a pro rata share. Thus, since the University prorated Morkin's sick leave, annual paid leave and personal holidays for 1990, it did not comply with the arbitrator's clear mandate. *See Chicago Newspaper Guild v. Field Enters., Inc., Newspaper Div.*, 747 F.2d 1153, 1156 (7th Cir. 1984).

Just because an award is silent as to whether an award should be offset or prorated by some factor does not make the award ambiguous. *Automobile Mechan-*

412

*ics Local 701, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991). In *Joe Mitchell*, the arbitrator ordered that the unlawfully discharged employees be "made whole." The employer offset the gross wage by amounts owed to the employer due to the employees' alleged failure to mitigate damages. *Id.* at 577. The court, however, determined that there was no ambiguity in the award with regard to offsets because the issue was brought to the attention of the arbitrator and the award was silent. *Id.* at 578. The court noted: "It is settled that arbitrators have discretion to decide whether lost earnings should be offset by interim earnings or a failure to mitigate, so that their silence on such issues means that no such offsets are to be made." *Id.* The court concluded that "the fact that the award is silent on such a subject [offsets] does not present an ambiguity; otherwise the award would have provided for such a deduction." *Id.* at 578-79 (citation omitted).

In *United Steelworkers of Am., AFL-CIO-CLC v. Danly Mach. Corp.*, 852 F.2d 1024, 1026 (7th Cir. 1988), the arbitrator ordered the employer "to *pay* grievant [sickness and accident] benefits in accordance with the above opinion." The employee, however, was unable to complete a benefits claim form because he was not under a treating physician's care. *Id.* The employer denied the benefits and argued that the award was ambiguous as to whether the employee was awarded the actual benefits or merely eligibility for those benefits. *Id.* The court, however, determined that the award was not ambiguous and that the employee should be awarded the benefits. *Id.* at 1027. The court reasoned that the purpose of filing the grievance was to obtain benefits and ordered the employer to pay them. *Id.*

413

We are not persuaded that *Hofmeister* and *Teamsters, Chauffeurs, Sales-Drivers & Helpers, Local Union No. 330 v. Elgin Eby-Brown Co.*, 670 F. Supp. 1393 (N.D. Ill. 1987), requires a contrary result.[2] In *Hofmeister*, the arbitrator determined that a wrongfully discharged employee "must be reinstated and made whole." *Hofmeister*, 950 F.2d at 1342. The employer contended that because the employee was injured after he was wrongfully terminated and could not work, he was not entitled to back pay. *Id.* The employer did not raise the issue before the arbitrator but the employee's union offered evidence that the employee could work with a back brace. *Id.* The employee's union argued that regardless of his after-discharge injury, he was entitled to lost wages and benefits. Otherwise the arbitration award would be nullified. *Id.* Nevertheless, the court concluded that the award was ambiguous and that the record did not resolve the ambiguity. *Id.* at 1345. According to the court, neither the complaint, pleadings, nor briefs provided "a consistent basis for the back pay which the Union claims is due under the arbitrator's make whole award." *Id.* With conflicting medical evidence before the arbitrator, the court determined that it was "unclear what 'make whole' means." *Id.* Thus, the court remanded the case to the arbitrator for clarification of the award. *Id.*

---

[2] WERC also argues that *WERC v. Teamsters Local No. 563*, 75 Wis. 2d 602, 606, 250 N.W.2d 696, 698 (1977), *overruled by City of Madison v. Madison Professional Police Officers Ass'n*, 144 Wis. 2d 576, 425 N.W.2d 8 (1988), supports its contention that an ambiguous award should be remanded to the arbitrator for clarification. That award was remanded because it was not a final and binding award with respect to whether a discharge was for just cause, not because the award was ambiguous. *Id.*

*Hofmeister* is distinguishable in two important ways. First, we are construing the meaning of "all lost wages and benefits" and not "make whole." The latter phrase is broader and may be ambiguous in certain contexts when conflicting evidence is before the arbitrator. Second, the University did not present evidence to the arbitrator regarding Morkin's history of using his leave time or whether prorating an award would be a proper remedy. Therefore, we cannot say that there is any ambiguity with regard to what the arbitrator intended. The arbitrator said that Morkin should be awarded "all lost wages and benefits." This statement is not ambiguous but requires that the University compensate Morkin for the full amount of time owed him and not a prorated amount. That the arbitrator may not have considered the possibility that its remedy might be prorated does not render the award ambiguous. We will not impute an ambiguity where there is none.

Similarly, in *Elgin*, the arbitrator awarded the wrongfully discharged employee full back pay, less earnings from other employment and offsets for unemployment compensation. *Elgin*, 670 F. Supp. at 1395. The arbitrator also ordered that the employee be "made whole" with respect to benefits. *Id.* The employer contended that the employee failed to mitigate his damages because he did not actively seek employment until after his unemployment compensation expired. *Id.* And, while the employer did not raise this issue before the arbitrator, it nonetheless contended that even though the award was silent as to mitigation, it was implicit in the award. *Id.* at 1396.

The *Elgin* court concluded that the award was ambiguous because it failed to specify the amounts to be deducted from the back pay award, but avoided

remand by determining that evidence in the record showed that "[t]he award is very clear that the only amounts to be deducted from [the employee's] back pay award are (1) 'earnings, *if any*, from other employment,' and (2) 'the appropriate offset for unemployment compensation.' " *Id.* at 1396-97. The court, however, concluded that the award was not ambiguous with regard to mitigation of damages because this issue was never before the arbitrator and therefore, it was clear that the arbitrator did not consider mitigation at all. *Id.* at 1397. *See also Joe Mitchell*, 930 F.2d at 578-79.

In Morkin's case, the arbitrator never indicated that his award should be offset or prorated by any factor. And like the mitigation issue in *Joe Mitchell* and *Elgin*, prorating the award was never before the arbitrator. Consequently, it is clear that the arbitrator did not consider prorating the award. Therefore, there is no ambiguity. Accordingly, we reverse the decision of WERC and order the University to pay Morkin *all* lost wages and benefits.

*By the Court.*—Order reversed.

GARTZKE, P.J. (*dissenting*). Unfair labor practice complaints are submitted to WERC. Section 111.84(4), STATS. The complaint in this case has to do with arbitration of a labor grievance. Labor arbitration raises issues within WERC's expertise. When, as here, the issue turns on the meaning of "all lost wages and benefits" in an arbitrator's award, it is proper for WERC to remand the matter to the arbitrator to find out what the arbitrator meant. WERC did not know, the trial court did not know, and one member of this panel does

not know what the arbitrator meant. The majority's claim that it knows is surprising.